# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1996
_____

Daniel Raskas

*Plaintiff-Appellee*

v.

Johnson & Johnson; McNeil-PPC, Inc.

*Defendants-Appellants*

_____

Marjie Levy

*Plaintiff-Appellee*

v.

Pfizer, Inc.

*Defendant-Appellant*

_____

Leslie Yoffie

*Plaintiff-Appellee*

v.

Bayer Healthcare LLC

*Defendant-Appellant*

————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: June 12, 2013
Filed: June 26, 2013

————————

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

————————

MELLOY, Circuit Judge.

     Johnson & Johnson, McNeil-PPC, Pfizer, Inc., and Bayer Healthcare LLC (collectively, "Defendants") appeal the district court's remand order.  The district court held that Defendants failed to establish the amount in controversy requirement under the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2).  The district court therefore found a lack of subject matter jurisdiction.

-2-

Because we determine that Defendants met the amount in controversy requirement, we reverse and remand to the district court.

I. Background

Marjie Levy, Leslie Yoffie, and Daniel Raskas (collectively, "Plaintiffs") filed three separate putative class-action suits in Missouri state court, alleging Defendants violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*, and conspired with unknown third parties to deceive customers into throwing away medications after their expiration dates, knowing that the medications were safe and effective beyond the expiration date. Marjie Levy sued Pfizer for its use of expiration dates on its Advil products; Leslie Yoffie sued Bayer for its use of expiration dates on Bayer Aspirin; and Daniel Raskas sued Johnson & Johnson and McNeil-PPC for their use of expiration dates on Tylenol Cold Multi-Symptom. Defendants removed to the United States District Court for the Eastern District of Missouri under CAFA. Each plaintiff filed a motion to remand claiming that CAFA's $5 million amount in controversy requirement was not met. The district court then consolidated the motions for a single hearing.

Defendants' evidence to establish the amount in controversy requirement consisted of data on sales of their respective medications in Missouri during the five-year statute of limitations time period. See Mo. Rev. Stat. § 516.210. Plaintiffs countered that these sales figures were insufficient to satisfy the amount in controversy requirement, as Plaintiffs are only seeking to recover damages for medications discarded and replaced.

The district court granted the motion to remand. The court found that Defendants had not met their burden of establishing the amount in controversy requirement, stating:

>Defendants have provided extensive data of sales of their respective products in question to citizens of Missouri. However, defendants do not propose a logical formula for calculating the potential damages in this case using only the total sales data provided. In fact, none of the defendants presents such a formula or methodology for calculating the potential damages, but rather asks the court to presume that the amount in controversy must satisfy the jurisdictional threshold based on the high sales figures alone. This type of speculation is not sufficient to satisfy the jurisdictional burden on defendants. As explained in Ongstad v. Piper Jaffray & Co., 407 F. Supp. 2d 1085, 1092 (D.N.D. 2006), "[n]either party has provided the Court with a reliable method to determine, or even guesstimate," the value of the medication in controversy in these cases. Therefore, I agree with other courts that have considered this issue that because the amount of damages is indeterminable at this stage of the proceedings, defendants have not met their burden of establishing subject matter jurisdiction over this case.

Defendants filed a request with this Court for review of the remand order pursuant to 28 U.S.C. § 1453(c). We granted the request.

II. Analysis

"We review de novo a district court's order to remand a removed case for lack of subject matter jurisdiction." Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009). CAFA "confers federal jurisdiction over class actions where, among other things, 1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in controversy is at least $5 million in the aggregate." Plubell v. Merck & Co., 434 F.3d 1070, 1071 (8th Cir. 2006) (citing 28 U.S.C. § 1332(d)). The district court determined "the issue of federal jurisdiction in [the current cases] centers on the amount in controversy."

"[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence. . . ." Bell, 557 F.3d at 958. Here,

-4-

in order to meet their respective burdens, each defendant relies on its own sales figures in Missouri during the relevant statutory time period. The district court found, and Plaintiffs argue on appeal, that these figures cannot establish the amount in controversy because they are overinclusive, as Plaintiffs are only attempting to recover damages for the medications wrongfully discarded and replaced due to Defendants' practices. However, when determining the amount in controversy, the question "'is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.'" Id. at 959 (quoting Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010) ("The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.").

Other circuits have rejected similar overinclusive arguments. In Spivey v. Vertrue, Inc., the plaintiffs filed a class action lawsuit in state court to recover alleged unauthorized credit card charges. 528 F.3d 982, 983 (7th Cir. 2008). The defendant removed to federal district court under CAFA and submitted an affidavit detailing its total credit card charges to establish the amount in controversy requirement. Id. at 985. The district court held that this was insufficient to establish the amount in controversy because the defendant "did not concede that more than $5 million in charges was unauthorized." Id. The Seventh Circuit reversed, finding that the total charges were sufficient to meet the defendant's burden because plaintiffs' claim that they were subjected to some unlawful charges put into controversy the propriety of all of the charges, and the sum of all of the charges exceeded $5 million. Id. at 985–86.

Similarly, the Ninth Circuit held that evidence of total charges for landline telephone services was sufficient to meet the amount in controversy requirement in a class-action suit alleging the defendant unlawfully charged some customers for landline telephone service without their consent. Lewis v. Verizon Commc'ns, Inc.,

-5-

627 F.3d 395, 400–02 (9th Cir. 2010). Relying on Spivey, the court held that the total charges established the amount in controversy requirement because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Id. at 400.

In the current case, each defendant's affidavit detailing the total sales of their respective medications in Missouri meets the amount in controversy requirement. First, defendant Pfizer produced an affidavit stating that sales from the relevant Advil products were over $14 million. Next, defendants Johnson & Johnson and McNeil-PPC produced an affidavit stating their total sales of Tylenol Cold Multi-Symptom as $3.3 million. When considering the total sales in conjunction with the request for punitive damages the amount in controversy requirement is met. See Mo. Rev. Stat. § 510.265.1(2) (limiting punitive damages to up to "[f]ive times the net amount of the judgment"); Hervey v. Mo. Dep't of Corr., 379 S.W.3d 156, 165 (Mo. 2012) (holding that "net amount of the judgment" for purposes of calculating punitive damages includes the attorney's fee award); see also OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 348 (8th Cir. 2007) (stating that punitive damages can be included when determining the amount in controversy). Finally, defendant Bayer provided an affidavit stating that its sales from certain Bayer Aspirin products were over $19 million.[1] All of these sales figures are sufficient to establish the amount in controversy requirement by a preponderance of the evidence.

---

[1] The district court held that Bayer's affidavit could not be used to establish the amount in controversy because it included sales from various Bayer Aspirin products, and Plaintiffs only intended to include a product named "Genuine Bayer Aspirin." However, Plaintiffs's complaint describes the medication in controversy as "Bayer Aspirin" or "Bayer Aspirin products." The complaint never appears to limit the medication to "Genuine Bayer Aspirin," and Plaintiffs cannot attempt to limit the medication after the fact to defeat jurisdiction. See Hargis v. Access Capital Funding, LLC, 674 F.3d 783, 789–90 (8th Cir. 2012) (stating that CAFA jurisdiction is determined by "the operative complaint at the time of removal").

"Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million," as Defendants have in this case, "then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." Spivey, 528 F.3d at 986 (internal citation omitted).  Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard.  See Keeling v. Esurance Ins. Co., 660 F.3d 273, 275 (7th Cir. 2011) (stating that the "legally impossible" test is not met even if it is "improbable" that plaintiffs will recover the entire amount that the defendants established as being "in controversy").

Further, Defendants are not required to provide a "formula or methodology for calculating the potential damages" more accurately, as the district court held.  We have specifically rejected the need for this kind of formula or methodology, as it would require a defendant to "confess liability" for the entire jurisdictional amount. Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 945 (8th Cir. 2012) (quoting Spivey, 528 F.3d at 986); see also Lewis, 627 F.3d at 400 ("To establish the jurisdictional amount, [the defendant] need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking [the defendant] to admit that at least $5 million of the billings were 'unauthorized' within the meaning of the complaint.").

Plaintiffs also argue that Defendants' affidavits are insufficient to establish the amount in controversy requirement because they contain inadmissible hearsay.  We reject Plaintiffs' argument.  As we have recently stated, "[t]he removing party's 'burden of describing how the controversy exceeds $5 million' constitutes 'a pleading requirement, not a demand for proof.'"  Hartis, 694 F.3d at 944–45 (quoting Spivey, 528 F.3d at 986); see also Pretka, 608 F.3d at 755 ("The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard.  Defendants may introduce their own

-7-

affidavits, declarations, or other documentation—provided of course that removal is procedurally proper.").

III. Conclusion

For the foregoing reasons, we vacate the district court's order and remand for a disposition on the merits.

_____